UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN MCDONALD, on behalf of himself, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>-against-<br><br>BLACK FOX COFFEE 70 PINE LLC d/b/a BLACK FOX COFFEE, and BLACK FOX COFFEE 438 WEST 33RD STREET LLC, and BLACK FOX COFFEE 45 EAST 45TH LLC, and BLACK FOX COFFEE KIOSK LLC, and BLACK FOX COFFEE ROASTERS LLC, and BLACK FOX COFFEE 550 MADISON AVE LLC, and DANIEL MURPHY, individually,<br><br>Defendants. | **COMPLAINT**<br><br>**Docket No.:**<br><br>Jury Trial Demanded |

BENJAMIN MCDONALD ("Plaintiff"), on behalf of himself, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs" and/or "Rule 23 Plaintiffs," as those terms are defined below), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against BLACK FOX COFFEE 70 PINE LLC d/b/a BLACK FOX COFFEE, and BLACK FOX COFFEE 438 WEST 33RD STREET LLC, and BLACK FOX COFFEE 45 EAST 45TH LLC, and BLACK FOX COFFEE KIOSK LLC, and BLACK FOX COFFEE ROASTERS LLC, and BLACK FOX COFFEE 550 MADISON AVE LLC, (all six entities, together, as "Black Fox"), and DANIEL MURPHY, individually, (together with Black Fox, where appropriate, as "Defendants"), alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and other redress based upon Defendants'
violations of: (i) the tip pooling and tip retention provisions of the Fair Labor Standards Act
("FLSA"), 29 U.S.C. § 203; (ii) the tip pooling and tip retention provisions of the New York Labor
Law ("NYLL"), § 196-d, and the N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 146-2.18;
(iii) New York common law, based on Defendants' conversion of Plaintiff's gratuities; (iv) the
NYLL's requirement that employers provide a wage statement to their employees on each payday
containing specific categories of accurate information, NYLL § 195(3); (v) the NYLL's
requirement that employers provide a wage notice to their employees at hire containing specific
categories of accurate information, NYLL § 195(1); and (vi) any other claim(s) that can be inferred
from the facts set forth herein.

2.      Plaintiff worked for Defendants - - six legally distinct entities that together operate
as a single enterprise to run at least five cafés in Manhattan, as well as the enterprise's owner and
day-to-day overseer - - as a non-managerial barista during three separate periods, first from
October 30, 2018, through March 18, 2020, second from early-October 2020 until June 20, 2021,
and lastly from December 13, 2021, until late-July 2022.   As described below, throughout
Plaintiff's three periods of employment, Defendants failed to pay him his proper share of tips, in
violation of the FLSA, the NYLL, and the NYCRR.   Specifically, Defendants required Plaintiff to
participate in an improper tip sharing arrangement by which pooled tips were distributed to those
who were ineligible, such as managerial and back-room employees, and thus Defendants failed to
pay Plaintiff the full amount of tips owed to him each workweek, and from early-October 2020
until June 20, 2021, Defendants failed to pay Plaintiff any tips at all, in violation of the FLSA, the
NYLL, and the NYCRR, which also constitutes conversion under New York common law.

3.     Defendants further violated the NYLL by failing to provide Plaintiff with: any wage statement on each payday from early-October 2020 through May 30, 2021, or with an accurate wage statement on each payday throughout the rest of his employment; and an accurate wage notice at any of his three separate times of hire.

4.     Defendants paid and treated all of their non-managerial front-of-the-house employees in this same manner.

5.     Accordingly, Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA.  Plaintiff brings his claims under the NYLL, the NYCRR, and New York common law on behalf of himself, individually, and on behalf of any FLSA Plaintiff, as that term is defined below, who opts-in to this action.

6.     Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable NYLL or New York common law limitations periods, who suffered damages as a result of Defendants' violations of the NYLL and the supporting New York State Department of Labor regulations, and/or New York common law.

## JURISDICTION AND VENUE

7.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq.*  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

8.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

9.      At all relevant times herein, Plaintiff worked for Defendants in New York and was an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

10.      At all relevant times herein, Defendant Black Fox Coffee 70 Pine LLC d/b/a Black Fox Coffee was and is a New York limited liability company with its principal place of business located at 70 Pine Street, New York, New York 10005, and which is registered with the New York State Department of State to receive service of process at 61 3rd Place, Apartment 1R, Brooklyn, New York 11231.

11.      At all relevant times herein, Defendant Black Fox Coffee 438 West 33rd Street LLC was and is a New York limited liability company with its principal place of business located at 438 West 33rd Street, New York, New York 10001, and which is also registered with the New York State Department of State to receive service of process at 61 3rd Place, Apartment 1R, Brooklyn, New York 11231.

12.      At all relevant times herein, Defendant Black Fox Coffee 45 East 45th LLC was and is a New York limited liability company with its principal place of business located at 45 East 45th Street, New York, New York 10017, and which is also registered with the New York State Department of State to receive service of process at 61 3rd Place, Apartment 1R, Brooklyn, New York 11231.

13.      At all relevant times herein, Defendant Black Fox Coffee Kiosk LLC was and is a New York limited liability company with its principal place of business located at 110 Wall Street,

4

New York, New York 10005, and which is registered with the New York State Department of State to receive service of process at 141 22nd Street, Brooklyn, New York 11232.

14.     At all relevant times herein, Defendant Black Fox Coffee Roasters LLC was and is a New York limited liability company with its principal place of business located at 70 Pine Street, New York, New York 10005, and which is registered with the New York State Department of State to receive service of process at 141 22nd Street, Brooklyn, New York 11232.

15.     At all relevant times herein, Defendant Black Fox Coffee 550 Madison Ave LLC was and is a New York limited liability company with its principal place of business located at 550 Madison Avenue, New York, New York 10022, and which is registered with the New York State Department of State to receive service of process at 141 22nd Street, Brooklyn, New York 11232.

16.     At all relevant times herein, Defendant Black Fox was an enterprise consisting of at least six separate New York corporations that operate as a single business enterprise engaged in the activity of operating at least five cafés in Manhattan, with centralized control of the business and labor operations located at 141 22nd Street, Brooklyn, New York.  Black Fox employs common management to set employees' hours, pay, and tip distribution policies, and there is common ownership and financial control with respect to business revenue, purchasing of supplies, setting and paying employee wages, as well as the operation of at least the five cafés.

17.     To that end, at all relevant times herein, Defendant Murphy was and is the owner and day-to-day overseer of Black Fox, who in that role personally managed and oversaw, and continues to manage and oversee, the day-to-day operations of the enterprise, and who was and is ultimately responsible for all matters with respect to hiring employees, terminating employees, determining employees' rates and methods of pay, determining the distribution of and required

participation in the mandatory tip pool, determining employees' work schedules, and maintaining employees' employment records, including those matters with respect to Plaintiff. Indeed, Murphy approved each of Plaintiff's hires, set Plaintiff's rate of pay, determined the portion of the tip pool that Plaintiff received, and should have maintained Plaintiff's employment records.

18.     At all relevant times herein, all Defendants were "employers" within the meaning of the FLSA and the NYLL. Additionally, at all times relevant to the FLSA, Black Fox's qualifying annual business exceeded and exceeds $500,000.00. Furthermore, Defendants were and are engaged in interstate commerce within the meaning of the FLSA, as they have employed two or more employees, and operate a business that purchases and sells numerous products that have moved across state lines, such as coffee beans, vanilla, sugar, syrups, cinnamon, and other ingredients. Defendants also accept payments in cash that naturally moves across state lines, as well as credit cards as a form of payment based on cardholder agreements with out-of-state companies. The combination of all of these factors subjects Defendants to the FLSA's tip pooling and tip retention requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff seeks to bring this suit to recover from Defendants unpaid tips and liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually, on his own behalf, as well as on behalf of those in the following collective:

> Current and former employees of Defendants, who during the applicable FLSA limitations period performed any work for Defendants as non-managerial, front-of-the-house baristas, or in a similar position, and who consent to file a claim to recover unpaid tips and liquidated damages that are legally due to them ("FLSA Plaintiffs").

20.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to participate in Defendants' tip pool; and (5) had a portion of their tips unlawfully distributed to those who were legally ineligible to participate in the tip pool or were not paid their tips at all.

21.     At all relevant times herein, Defendants were aware of the requirement to distribute tips from their mandated tip-pool to only non-managerial, front-of-the-house employees, including Plaintiff and all FLSA Plaintiffs, yet they purposefully and willfully chose and continue to choose not to do so.  Indeed, during his employment, Plaintiff discussed the illegal nature of Defendants' tip distribution policy with one of his managers, Patrick Yim, who explicitly mentioned having discussed the same with Murphy, yet Defendants continued to distribute a portion of the tip pool to back-of-the-house and managerial employees.

22.     Thus, Plaintiff and all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay the full amount of tips owed to them, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

23.     In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), on behalf of himself, individually, as well as on behalf of all those who are similarly situated whom Defendants subjected to violations of the NYLL, the NYCRR, and New York common law during the applicable statutory periods.

24.     Under FRCP 23(b)(3), Plaintiff must plead that:

        a.      The class is so numerous that joinder is impracticable;

b.      There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

c.      Claims or defenses of the representative are typical of the class;

d.      The representative will fairly and adequately protect the class; and

e.      A class action is superior to other methods of adjudication.

25.     Plaintiff seeks certification of the following FRCP 23 class:

> Current and former non-managerial front-of-the-house employees, who during the applicable NYLL and New York common law limitations periods, worked at Defendants' cafés in New York ("Rule 23 Plaintiffs").

<u>Numerosity</u>

26.     At all times during the applicable NYLL and New York common law limitations periods, Defendants have, in total, employed at least forty employees that are putative members of this class.

<u>Common Questions of Law and/or Fact</u>

27.     There are questions of law and fact common to each and every Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including, but not limited to, the following: (1) the duties that the Defendants required and require each Rule 23 Plaintiff to perform; (2) whether the Defendants required and require each Rule 23 Plaintiff to participate in Defendants' tip pool; (3) whether the Defendants withheld portions of tips from Rule 23 Plaintiffs and instead distributed those tips to employees who are not legally eligible to participate in tip sharing or did not pay Rule 23 Plaintiffs at all; (4) whether the Defendants' conduct in withholding portions of, or all, tips from Rule 23 Plaintiffs was willful; (5) whether the Defendants furnished and furnish the Rule 23 Plaintiffs with a wage statement on each payday that accurately contains the information that NYLL § 195(3) requires; (6) whether the

Defendants furnished or furnish the Rule 23 Plaintiffs with a wage notice at hire that accurately contains the information that NYLL § 195(1) requires; (7) whether the Defendants kept and maintained records with respect to the tips collected and compensation that they paid to the Rule 23 Plaintiffs; (8) whether the Defendants maintain any affirmative defenses to the Rule 23 Plaintiffs' claims; (9) whether the Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and its supporting regulations and/or New York common law; and (10) if so, what constitutes the proper measure of damages.

Typicality of Claims and/or Defenses

28.     As described in the "Background Facts" section below, Defendants employed Plaintiff and Rule 23 Plaintiffs as non-managerial front-of-the-house employees who worked at their cafés in New York.  Plaintiff's claims are typical of the claims of the Rule 23 Plaintiffs whom he seeks to represent, as the Rule 23 Plaintiffs work and/or have worked for Defendants in New York and were and/or are subject to Defendants' mandated tip pooling system, in which Defendants unlawfully withhold and misappropriate tips to employees not eligible to participate in tip sharing, or simply do not pay tips at all, thus unlawfully converting the tips and using them for Defendants' own purposes, while also failing to provide them with an accurate wage statement on each payday or an accurate wage notice at hire.  Plaintiff and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL, and/or under New York common law, to not have their employer retain any portion of any tip or gratuity to which they are entitled, and to be furnished with an accurate wage statement on each payday and with an accurate wage notice at hire.  Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of the Defendants' failure to comply with the NYLL and its supporting regulations, as well as New York common law.  Plaintiff and the Rule 23 Plaintiffs all have suffered injury, including lack of compensation

or under-compensation, due to the Defendants' common policies, practices, and patterns of conduct.  Thus, Plaintiff's claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendants' defenses to those claims.

Adequacy

29.    Plaintiff, as described below, worked under the same or similar mandated tip pooling arrangement as the Rule 23 Plaintiffs throughout his employment with Defendants. Defendants did not pay Plaintiff the full amount of tips to which he was entitled throughout his employment, and thus obstructed Plaintiff's ability to possess the portions of tips that lawfully belonged to him, and did not furnish Plaintiff with an accurate wage statement on each payday or with an accurate wage notice at any of his times of hire, which is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs.  Plaintiff is no longer employed with Defendants, and thus has no fear of retribution for his testimony.  Plaintiff fully anticipates providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer that pertain to him.  Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

30.    Additionally, Plaintiff's counsel has substantial experience in this field of law.

Superiority

31.    Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, the Defendants treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

32.    Any lawsuit brought by a non-managerial barista and/or front-of-the-house employee of Defendants who performed work at Defendants' cafés for the same violations alleged

herein would be identical to a suit brought by any other similarly-situated employee for the same violations. Thus, separate litigation would risk inconsistent results.

33. Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## BACKGROUND FACTS

34. Defendant Black Fox is a single enterprise of at least six New York corporations that collectively operate at least five cafés throughout Manhattan, located at 438 West 33rd Street, 550 Madison Avenue, 70 Pine Street, 45 East 45th Street, and 110 Wall Street.

35. Defendant Murphy is Defendant Black Fox's owner and is the enterprise's primary day-to-day manager, who in that role oversees the daily operation of the cafés and who controls the terms and conditions of employment for all of its employees, in that he has and exercises the power to hire and fire all employees, supervises and controls employee work schedules, determines the rate and method of wages paid to all employees, determines the distribution of and required participation in the mandatory tip pool, and is responsible for maintaining employment records. To that end, Murphy personally set Plaintiff's rate of pay, supervised his work, determined his weekly schedule, maintained his employment records, and determined what portion of tips he would receive.

36. From October 30, 2018, through March 18, 2020, Plaintiff worked for Defendants as a non-managerial barista at their 70 Pine Street location. In this role, Plaintiff's primary duties consisted of working the cash register, preparing and serving food and drinks to customers, and maintaining the café's cleanliness. After being laid off due to the COVID-19 pandemic, Plaintiff resumed working for Defendants as a non-managerial barista at their 70 Pine Street location from early-October 2020 through June 20, 2021, at which time Plaintiff resigned. Finally, Plaintiff again worked for Defendants from December 13, 2021, until late-July 2022, also as a non-

managerial barista at primarily the 70 Pine Street location, while also working occasional shifts at the 45 East 45th Street location from February through March 24, 2022, and at the 110 Wall Street location from late-March until April 20, 2022.

37. At all times throughout Plaintiff's employment, at all of their locations, Defendants employed individuals who worked under the title of dishwasher and line cook, both of which were back-of-the-house positions, as neither position involved any interaction with Defendants' customers.

38. At all times throughout Plaintiff's employment, at all of their locations, Defendants employed individuals who worked under the title of assistant manager, general manager, and executive chef, all of which were managerial employees, as each position involved disciplining subordinate employees, recommending employees to be hired or fired, assisting in performance evaluations, and having input in the creation of employee work schedules.

39. At all times throughout Plaintiff's employment, at all of their locations, Defendants' customers left tips for Plaintiff and other front-of-the-house employees either by placing cash in a tip jar located by the cash register, or by designating a specific amount to be tipped in their credit card transaction. Defendants' policy and practice was to have their closing manager, at the end of each business day, collect the cash tips and deposit them in Defendants' safe, tally all tips left by credit card transaction, and report the total amount of tips for the day to the general manager. Before any distribution of tips left by credit card ever occurred, Defendants first removed two and one-half percent of those tips and retained that money to account for the expense of the transaction.

40. As with all of Defendants' employees, when Plaintiff began working for Defendants for the first time and was initially onboarded, the general manager explained to Plaintiff that he was required to participate in Defendants' tip pool and how Defendants would

calculate the percentage of tips that he would receive, and told Plaintiff that he would receive his portion of the tips with his weekly wages.

41. At all times relevant herein, Defendants have mandated that all of their front-of-the house employees, including managerial workers, participate in Defendants' tip pool by contributing to it all tips left to them, and Defendant Murphy then determines to whom the pooled tips are distributed and in what amounts. Defendants have often reflected this information in a chart that they make available to their employees.

42. Each week, Defendants distribute a portion of the pooled tips to their employees who were not eligible to receive tips, including back-of-the-house employees, such as Defendants' dishwashers and line cooks, as well as managerial employees, such as Defendants' assistant managers, general managers, and executive chefs.

43. To determine how much each person would receive, if they are to receive any tips at all, Defendants assign each employee a "point rank," which determines the share of the daily tips that Defendants will provide to them, as calculated by multiplying their point rank by their "hours worked," which was the number of hours that they actually spent working in a day, to determine their "hours earned," a figure that may be equal to or lesser than the numbers of hours actually spent working. Defendants then take the daily total of pooled tips from that particular location, less the two-and-one-half percent of tips left by credit card, divided by the total number of "hours earned" by employees who worked at that location that day, and then multiply that figure by each individual employee's "hours earned" to determine the employee's portion of the tips.

44. By way of example only, for the week of April 4 through April 10, 2022, Defendants required Plaintiff to work, and Plaintiff did work, a total of twenty-eight hours and fifty-three minutes, according to the following schedule:

> Monday, April 4, 2022: 5.67 hours;
>
> Tuesday, April 5, 2022: off;
>
> Wednesday, April 6, 2022: off;
>
> Thursday, April 7, 2022: 7.02 hours;
>
> Friday, April 8, 2022: off;
>
> Saturday, April 9, 2022: 8.30 hours; and
>
> Sunday, April 10, 2022: 7.90 hours.

That same week, on the days that Plaintiff worked, Defendants' 70 Pine Street location received the following amount of total tips, less the two-and-one-half percent of tips left by credit card, and had the following total amount of hours worked and "hours earned" by employees each day:

> Monday, April 4, 2022: $525.91 tips, 51.19 hours worked, 47.04 hours earned;
>
> Thursday, April 7, 2022: $537.24 tips, 58.08 hours worked, 45.91 hours earned;
>
> Saturday, April 9, 2022: $489.41 tips, 39.40 hours worked, 28.26 hours earned; and
>
> Sunday, April 10, 2022: $525.91 tips, 54.56 hours worked, 43.26 hours earned.

During this week, Plaintiff's point rank was "1.00," thus, on Monday, Defendants calculated that Plaintiff would receive $63.39 of the tips received at 70 Pine Street that day as follows:

> 5.67 (hours worked) x 1.00 (point rank) = 5.67 (Plaintiff's hours earned)
>
> $525.91 (total tips) / 47.04 (total hours earned) = $11.18 (share per hour earned)
>
> $11.18 (share per hour earned) x 5.67 (Plaintiff's hours earned) = $63.39

However, that same day, Jared Hunt, Defendants' executive chef, who was a back-of-the-house managerial employee, worked for eight hours with a "1.00" point rank, and thus Defendants paid him $89.43 of the tips received at 70 Pine Street that day, despite his lack of eligibility to participate in a tip pool.

45.     By intentionally distributing portions of the employee tip pool to their back-of-the-house and managerial employees, Defendants withheld and misappropriated money that was lawfully due to Plaintiff.  Thus, Defendants obstructed Plaintiff's ability to possess the money in question, without Plaintiff's authority, and used it for their own purposes by distributing it to others and by using it to offset the agreed upon salary of their managerial employees.

46.     Throughout his employment, Defendants paid Plaintiff on a weekly basis, by check, which included Plaintiff's share of the tip pool for that week, except for the period of early-October 2020 through May 30, 2021, during which Defendants paid Plaintiff through Venmo, by having Steven Levy, Defendants' Director of Operations, send Plaintiff payments through his Venmo account.  In paying Plaintiff by Venmo during this time, Defendants failed to pay Plaintiff any portion of his share of the tip pool.

47.     On each occasion when Defendants paid Plaintiff during his employment from October 30, 2018, through March 18, 2020, and from December 13, 2021, until the end of his employment in late-July 2022, Defendants failed to furnish Plaintiff with a wage statement that accurately listed the amount of tips that Plaintiff was lawfully owed.  From early-October 2020 through May 30, 2021, Defendants failed to provide Plaintiff with any wage statement on each payday at all, let alone an accurate one.

48.     Additionally, Defendants did not provide Plaintiff with a wage notice at any of his three times of hire that accurately contained, *inter alia*: any allowances claimed, including, specifically, allowances for claiming a tip credit; the name of Defendants; any "doing business as" names used by Defendants; the physical address of Defendants' main office or principal place of business, and a mailing address if different; and Defendants' telephone number.

49. Defendants' failure to provide with Plaintiff with an accurate wage notice at hire or with an accurate wage statement on each payday deprived Plaintiff of the ability to know, in a timely manner, exactly how much compensation he was and is entitled to and/or who the legal entity or entities to sue for this compensation would be, and has resulted in the underpayment of wages as asserted herein, as well as any loss from not receiving all of his wages owed when due.

50. Defendants treated Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs in the same manner described herein.

51. Defendants acted in the manner described herein to maximize their profits and minimize their labor costs and overhead.

52. Each hour that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs worked was for Defendants' benefit.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Distribute Tips in Violation of the FLSA*

53. Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54. 29 U.S.C. § 203 prohibits an employer from keeping tips received by its employees for any purposes, including by allowing managers, supervisors, or any employee who does not regularly receive tips, such as cooks and dishwashers, to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

55. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are employees eligible to receive tips within the meaning of the FLSA.

56. As also described above, Defendants did not distribute all tips left by patrons of their establishments to Plaintiff and FLSA Plaintiffs as required by law.

57.     Defendants willfully violated the FLSA.

58.     Plaintiff and FLSA Plaintiffs are entitled to compensation for all tips that Defendants unlawfully withheld from them during each week of their employment, in violation of the FLSA.

59.     Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violation of the FLSA's tip pooling and tip retention provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Distribute Tips in Violation of the NYLL and the NYCRR*

60.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61.     NYLL § 196-d and 12 NYCRR § 146-2.18 prohibit an employer from accepting, retaining, or providing any tip or portion of a tip to individuals other than service employees or food service workers.

62.     As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action are employees eligible to receive tips and food service employees within the meaning of the NYLL and the NYCRR.

63.     As also described above, Defendants did not distribute all tips left by patrons of their establishments to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action as required by law.

64.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action are entitled to compensation for all tips that Defendants unlawfully withheld from them during each week of their employment, in violation of the NYLL and the NYCRR.

17

65.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violation of the NYLL and the NYCRR's tip pooling and tip retention provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Conversion in Violation of New York Common Law*

66.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

67.     The New York common law tort of conversion prohibits an individual or entity from intentionally, and without consent, taking control over the money or property of another, or otherwise obstructing an individual's ability to possess his/her money or property.

68.     Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action for all tips that their patrons left for Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action that Defendants retained for their own use.

69.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action are also entitled to punitive damages as a result of Defendants' conversion of their money.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Accurate Wage Statements in Violation of the NYLL*

70.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71.     NYLL § 195(3) requires that employers furnish employees with a wage statement containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

72.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action are employees within the meaning of the NYLL.

73.     As also described above, Defendants, on each payday, failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action with a wage statement that accurately contained all of the criteria that the NYLL requires.

74.     Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action in the amount of $250.00 for each workday that each violation occurred, up to a statutory cap of $5,000.00 per person.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Accurate Wage Notices in Violation of the NYLL*

75.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

76.     NYLL § 195(1) requires that employers provide employees with a wage notice containing accurate, specifically enumerated criteria at the time of hire.

77.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action are employees within the meaning of the NYLL.

78.     As also described above, Defendants failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action with a wage notice at the time of hire that accurately contained all of the criteria that the NYLL requires.

79.     Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-in to this action in the amount of $50.00 for each workday after each violation initially occurred, up to a statutory cap of $5,000.00 per person.

## DEMAND FOR A JURY TRIAL

80.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand judgment against Defendants as follows:

a.   A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.   Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.   An order restraining Defendants from any retaliation against Plaintiff, FLSA Plaintiffs, and/or Rule 23 Plaintiffs for participation in any form of this litigation;

d.   Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and authorizing the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.   Certification of the claims brought in this case under the NYLL and the NYCRR as a class action pursuant to FRCP 23;

f.   Awarding all damages that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and/or gratuities and any short fall between wages and/or gratuities paid and those due under the law that Plaintiff, FLSA Plaintiffs, and/or Rule 23 Plaintiffs would have received but for Defendants' unlawful payment practices;

g.   Granting liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

h.   Granting an award of punitive damages commensurate with Defendants' ability to pay in connection with Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs' common law conversion claims;

i.   Awarding Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and other costs, and an award of a service payment to Plaintiff;

j.   Designation of Plaintiff and his counsel as collective and class action representatives under the FLSA and the FRCP, respectively;

k.   Awarding pre-judgment and post-judgment interest, as provided by law; and

l.    Granting Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs other and further relief

as this Court finds necessary and proper.

Dated:  Garden City, New York
        January 24, 2023

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
910 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel. (516) 248-5550
Fax. (516) 248-6027

By:    _____
ANDREW C. WEISS (5560537)
ALEXANDER T. COLEMAN (AC 1717)
MICHAEL J. BORRELLI (MB 8533)